### Edward Sutton *vs.* Peter Burnett.

*Addison,*
*January,*
*1826.*

A bond executed to one of several partners, conditioned to indemnify him against any obligation *he* should enter into to the firm, on account of his paying out monies of a third person, in the hands of the firm, is valid in law; and his acceptance of such a bond, makes him a trustee thereof for the company, it appearing, by the condition, to be executed for their benefit. And if the company should be compelled to pay the money again, *he* might sustain an action thereon, upon executing to the firm such *obligation* as the condition of the bond specified.

*Quere*—If he could not sustain such action, by reason of his liability *in law*, to the firm.

*Held*, that a promise to pay the balance of an account, with a third person, in consideration that *a draft* of such third person upon the promissor, in favour of the promisee, be left with the promisor, with evidence that the draft was so left, and of a demand and refusal, after the subject matter of the account was closed, so that the balance could be ascertained, will sustain a verdict in favour of the promisee against the promissor, for the balance found, upon a count in general *indebitatus assumpsit*, for money had and received.

If a verdict be had against a defendant, for monies in his hands, for which he may be liable to be called upon by *other* parties, his remedy is not by motion to set aside the verdict for that cause, but by application to the Court, to order a stay of execution, till an indemnity should be deposited with the clerk of the Court, for the benefit of such defendant.

In declaring upon a cause of action where the delivery of a *particular* indemnity is a condition precedent, and a *different* one has been delivered, or tendered without objection on *that account*, the plaintiff should state *what* bond or indemnity he did tender, and alledge that the defendant discharged him from the obligation to deliver any other.

Where a party, sued for monies of a third person in his hands, has furnished proof, which uncontradicted, would substantiate an account by him exhibited, with a view to show no balance in his hands, the burthen of proof is on the plaintiff; and the general language and conduct of the party accounting, in relation to the transaction and subject matters of the account, are evidence proper to be given to the jury, with a view to impeach such account.

*Dictum.*—If the judge should charge the jury wrong in relation to the allowance of a particular item of claim, which is liquidated or certain, or may be rendered so by the proofs appearing in the case, (as, for commissions,) the Court would not, for that cause, set aside the verdict; but would confirm it, under a rule that the plaintiff deduct the amount of such item, as the jury ought to have been instructed to allow the defendant.

THIS cause came before the Court, on a motion to set aside the verdict, and for a new trial. The facts in the case, and the

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett.

points relied upon by the counsel in argument, will sufficiently appear in the following opinion of the Court, which was delivered by

HUTCHINSON, J. This is an action of *assumpsit,* brought against the defendant and a number of other persons, who are partners in trade under the firm of Rogerson, Hunter & Co. The defendant resides at Quebec, and is the acting partner there, and the others reside in different empires in Europe. The writ was served on Burnett only, and a *non est* return made with regard to the other defendants.

The declaration consists of two counts; the first sets forth that one *Platt K. Gage* drew an order upon the said company, in favour of the plaintiff, on the 30th of October, A. D. 1819, for £525, Halifax currency; that the same was delivered to the defendants on the same day, and that, in consideration of such delivery, and of said defendants having in their possession, and at their disposal, a large amount of property of said Gage, the defendants promised the plaintiff, that, should there remain in their hands, after their own claims against the said Gage were adjusted and paid, sufficient money of the said Gage, they the defendants would pay the same to the plaintiff on account of said order, when requested, &c. and that afterwards, on the 16th day of May, A. D. 1820, the defendants further promised the said Sutton, that, in case the said Sutton would furnish the defendants with a satisfactory guarantee to indemnify them against any claims which might afterwards be set up by others, relative to the balance which might remain in the hands of said defendants, after payment of their own claims as aforesaid, that they, the defendants, would consider themselves responsible to the said Sutton for said amount of said order, if so much should remain, or would pay such balance as should so remain, not exceeding the amount of said order. The plaintiff then avers, that after said claims were adjusted, there did remain a sufficient balance in the defendant's hands to pay said order, &c. and that the plaintiff tendered to the defendants a satisfactory guarantee, &c. and demanded payment. A promise in law to pay, is then raised, and payment negatived.

The second count is a general count for $2,100, for money had and received by the defendants to the plaintiff's use. The defendant, Burnett, appeared and plead the general issue to both counts, and the issue was joined to the country. The cause was tried by the jury, at the January term of this Court, A. D. 1824, when a verdict was returned for the plaintiff, for $1,313,92, and the following bill of exceptions was allowed by the judge who presided at the trial, to wit:

On the trial of the issue, joined between the parties in this cause, the plaintiff read in evidence to the jury, a letter addressed to him, and signed by Rogerson, Hunter & Co. dated Oct. 30, 1819, and also a letter from the same to the same, dated May

16, 1820.* To show a performance, on the part of the plaintiff, of the condition of the contract contained in the letter of May 16, 1820, the plaintiff offered to give in evidence, a bond executed by the plaintiff and *Amos W. Barnum* to *Peter Burnett,* dated July 18, 1820, † and also offered to prove, that in August, 1820, the plaintiff enclosed said bond in a letter to Ezra Meech, and requested him to sign it himself, if necessary, and present it to Mr. Burnet, at Quebec, and demand payment of the mon-

*Addison, January, 1826.*

Sutton
*vs.*
Burnett.

---

*These letters were as follow :

Quebec, 30th Oct. 1819.

Mr. Edward Sutton,

Sir—We have this day received from you, Mr. Platt K. Gage's draft on us, for five hundred and twenty-five pounds currency, which we cannot accept of, but should there remain in our hands a sufficient sum of money, after our own claims are adjusted, we will remit the same on account of said draft, if it is left with us. There is a very considerable amount of Gage's property in our hands, and we are of opinion, more than to meet all our claims.

We are, Sir,
Your most obedient servants,
(Signed) ROGERSON, HUNTER & Co.

Quebec, 16th May, 1820.

Edward Sutton, Esq.

Sir—We shall consider ourselves responsible to you for £525 currency, if after satisfying all demands we now hold against the estate of the late P. K. Gage, that amount appears to be due by us, or whatever balance may appear, not to exceed the above sum, provided you furnish us with satisfactory guarantee to indemnify us against any claim which may hereafter be set up by others relative to said balance. We are, Sir,
Your most obedient servants,
(Signed) ROGERSON, HUNTER & Co.

†This bond was for the penal sum of *four thousand dollars,* and the condition thereof was as follows:

The condition of this obligation is such, that whereas, on the thirtieth day of October, in the year of our Lord, one thousand eight hundred and nineteen, and also on the sixteenth day of May, in the year of our Lord one thousand eight hundred and twenty, the firm of Rogerson, Hunter & Co. of Quebec aforesaid, by their several memorandums in writing, of the above dates, acknowledged to have received from the above bounden Edward Sutton, a certain draft on them, signed by Platt K. Gage, for the sum of five hundred and twenty-five pounds currency, and therein stipulated that they would be responsible to the said Edward for the said sum of five hundred and twenty-five pounds currency, if, after satisfying all demands the aforesaid firm of Rogerson, Hunter & Co. on the sixteenth day of May, A. D. 1820, held against the estate of the said Platt K. Gage, then deceased, it should appear the aforesaid sum should be due from them, or for whatever balance might appear, not to exceed the aforesaid sum, provided the said Edward Sutton shall furnish them with satisfactory guarantee, to indemnify them against all claims which might thereafter be set up by others. And whereas, the aforesaid Peter Burnett, for and in behalf of said Edward Sutton, is about to obtain from the said firm of Rogerson, Hunter & Co. the whole or part of the aforesaid sum of five hundred and twenty-five pounds currency, agreeable to the tenor of said draft, and the conditional acceptance thereof, as by the aforesaid memorandums specified.

Now if the above bounden Edward Sutton and ———— their heirs, executors and administrators, shall well and truly indemnify and save harmless the said Peter Burnett from all obligations he may enter into to the said firm of Rogerson, Hunter & Co. to indemnify them in case they shall pay over to the said Edward the aforesaid sum of five hundred and twenty-five pounds currency, or any part thereof, agreeable to the tenor of said draft, and the conditional acceptance thereof, and the further condition in said memorandums specified, then the foregoing obligation to be void; otherwise to be and remain in full force and virtue.

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett.

ey mentioned in the letter last aforesaid; that Mr. Meech accordingly called upon Burnett, and informed him that he had such a bond, signed by the persons whose names are thereto subscribed, and offered to sign it himself; that Mr. Burnett replied, that if he, Mr. Meech, signed it, it would be satisfactory; but he did not wish to take the bond then, as the accounts between them and Gage's estate were not closed, and he could not tell what sum would remain in their hands, though he thought there might be three or four hundred pounds, but he would close the accounts soon, and if there should be a balance, Mr. Meech might draw on him in behalf of the plaintiff for the same.

Mr. Meech being called and sworn, testified to the facts aforesaid, and also that he does not know that he showed the bond, or that Mr. Burnett read it, or asked to hear it read, and that afterwards, in October, 1820, Burnett wrote to him, and stated that the accounts were then closed, and that there was a balance in his favour against the estate of Gage. To the admission of the said bond in evidence, the counsel for the defendant objected, but the Court overruled the objection, and admitted said bond to be given in evidence to the jury.

The defendant being called upon by the plaintiff to render an account of the timber left in the hands of Rogerson, Hunter & Co. by the said Platt K. Gage, and of their claims against him, exhibited and gave in evidence an account of sales, and an account current,* and gave evidence tending to prove that they were truly transcribed from their books, except as to the order of the items, (the items in said account being arranged in the order of the date of the vouchers, which is not the case with the original books) and that they contain an account of all the receipts and disbursements of the property of said Gage, which came into the hands of the defendants, and of monies paid and advanced to him or on his account; and also gave evidence tending to prove the truth of the items in said accounts contained. He also gave evidence tending to prove, that *Pentland* & *Berry* became insolvent in May, 1820, and that the amount of the sale to them had never been paid to Rogerson, Hunter & Co. and that the timber mentioned in said accounts as sold to Chinic & Vezina, was, by the direction of Rogerson, Hunter & Co. sold at publick action, at Quebec, May 13, 1820; that Chinic & Vezina were then regular auctioneers, and in good credit, but became insolvent in September, 1820, and that it is the usage in Quebec, for a factor or agent to sell at aution and on credit, unless restricted by his instructions, and that the said sale was publicly notified in the usual manner, and held at a seasonable and proper time.

---

*These accounts show, among other things, a credit to the estate of *Gage,* of $5180,95, as the nett proceeds of *Chinic* & *Vezina's* sales of timber, the property of *Gage,* on the 15th July, 1820, and made the estate debtor for loss by the insolvency of *Chinic* & *Vezina,* $1096,80; and show a loss by the insolvency of *Pentland* & *Berry,* of $898,08, on account of timber previously sold to them by *Gage.* The result of the whole account current, was a balance in favour of *Rogerson, Hunter* & *Co.* against the estate of *Gage,* of $2580,12, on the 31st day of December, 1821.

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett.

The plaintiff thereupon gave evidence tending to prove, that on the first of September, 1819, Rogerson, Hunter & Co. purchased of Gage, at *four pence* per foot, the same *white pine timber* which was afterwards sold at publick auction, by Chinic & Vezina as aforesaid, and that Gage *died* about the 1st of November, 1819 ; and, as tending to show the sale at auction to be merely colourable and fraudulent, the plaintiff was permitted by the Court, though objected to by the defendant, to prove that Rogerson, Hunter & Co. bought in the greater part of the timber which was sold at auction, and shipped the same on their own account, and that the market price of white pine timber in Quebec in June and July, 1820, was *four pence* per foot, and oak *one shilling two pence* per foot.   He also read in evidence to the jury, two letters addressed to *Enoch D. Woodbridge,* administrator of Gage,* and also gave evidence tending to prove, that *Gen. Lawrence,* at the request of said administrator, called on the defendant, on the 10th of May, 1820, when the defendant said he could not tell the amount which would remain in their hands ; that Lawrence wished the defendant not to pay Sutton, as he was a creditor ; that the defendant said his attorney, Mr. *Stewart,* of Quebec, had told him that he must pay the Sutton debt, and said that he thought there would be something in his hands for the administrator of Gage, after paying Sutton ; but the claim against Pentland & Berry was then deemed good, and also gave evidence tending to prove, that Amos W. Barnum was employed by the plaintiff to call on the defendant, and get the money in Gage's life time; that he called, with Gage, on the defendant, who said it was impossible to raise the money then ; that afterwards, in July or August, 1820, he called on Burnett again ; that Burnett then said that there was not money enough in his hands, but that there was *three* or *four hundred pounds* in his hands which he would pay him, and asked Barnum if he would discharge the debt, if he, Burnett, would pay *that* sum ; that Barnum refused, and Burnett then told him the timber was all sold, but not that the accounts were closed ; that Burnett promised Barnum, that he would pay the sum on hand, if he would wait till the next boat ; that Barnum did wait, and called at the time appointed, but Burnett was not at his counting-house.

The defendant then produced testimony, tending to prove that the contract made by Rogerson, Hunter & Co. on the first of September, 1819, for the purchase of the white pine timber, was afterwards rescinded, at the request of Gage, and ceased to have any effect.   Whereupon,

The Court charged the jury, "that in as much as the plaintiff had given no proof of his acceptance of the proposition made in the letter of the 30th of October, 1819, or of any notice to the defendant of his acceptance thereof, he could not recover in virtue of that letter, but must recover, if he recovered at all, upon the contract contained in the letter of the 16th of May, 1820 ;

---

*The substance of these letters, material in the case, will be found recited in the opinion of the Court.

26

*Addison,*
January,
1826

Sutton
*vs.*
Burnett.

that the testimony of Ezra Meach, if believed, proved a sufficient compliance in law, on the part of the plaintiff, with the condition of that contract, and Rogerson, Hunter & Co. from the date of the letters, became bound by the terms of the contract; that Rogerson, Hunter & Co. were not answerable for the loss sustained by the failure of Pentland & Berry, and that if the jury believed the account rendered by the defendant to be correct, from the evidence exhibited in support of it, there was a very considerable balance due from the estate of Gage, to the company, and the plaintiff could not recover, unless he had succeeded in convincing the jury that the account was faithless and false, or at least, that it was so in some essential particulars; that the plaintiff had undertaken to do so, by testimony tending to show, that about 28000 feet of white pine timber, sold with other timber, by Chinic & Vezina, was not, at the time of that sale, the property of Gage, but had been sold by Gage, to the defendant, the fall before, at four pence per foot; and also by testimony tending to discredit the account generally, by showing conversations and conduct of the defendant, such as testified to by Gen. Lawrence, Amos W. Barnum and Ezra Meach, inconsistent with such a state of things as shown by the account; that if the plaintiff had succeeded in convincing the jury that the defendant had not fairly accounted for the avails of the property of Gage, which had gone into the hands of Rogerson, Hunter & Co. they would then proceed to inquire what monies had been received by them, or must be presumed in law to have been received, on account of Gage; that if they believed that the defendant did not purchase of Gage the fall before the auction, the white pine timber, or that such bargain, if made, was afterwards given up by the parties, the defendant was answerable for the nett proceeds of the sale at auction, and was not answerable for the loss sustained by the failure of Chinic & Vezina, provided they believed, from the evidence, that it was *customary* to make sale of timber at auction, under the circumstances which that sale was made, and that Chinic & Vezina were reputed to be responsible at the time they were employed by the defendant; that if they believed from the testimony, that the defendant did purchase the white pine timber of Gage, at *four pence* per foot, he ought to account for that timber at that price, and for the balance as above stated, provided they believed from the evidence, that the sale at auction was a *bona fide* sale; that if they found that the defendant did purchase the white pine timber of Gage, and afterwards sold it at auction as Gage's timber, it was evidence that the auction was a sham sale, and not made in good faith, and they would take it into consideration with the other proofs in relation to the transaction; but if they believed the auction sale was merely colourable, and that property of Gage had been disposed of by the company, the defendant was to be charged with the fair market price of the property at the time of such disposition, deducting the usual commissions, where it appeared the sale was not to the company; for, in that case, the

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett

defendant must be presumed to have received that price. That as to the charges on the debtor side of the account, exhibited by the defendant, the jury were to be satisfied by the vouchers and proofs, that the items were just, and where they were so satisfied, it was their duty to allow the charges, and where they were not satisfied, to reject them ; that if they found, on a fair accounting for the property of Gage, that there was no balance in the hands of the defendant, they would find a verdict for the defendant to recover his cost; that, if they found a balance in the hands of the defendant, less than the amount of the draft, they would find for the plaintiff to recover the amount of such balance, and interest thereon from demand made."

The Court have attended to the arguments of the counsel, this term, on the several questions they have seen fit to raise on the foregoing exceptions.

The first question raised is, whether the Court did right in admitting to be read to the jury, the bond or guarantee tendered by the plaintiff to Burnett, and referred to in the said exceptions, as a part of the case?

Several objections are raised to this bond. It is contended by the defendant's counsel, that the giving of the bond is a condition precedent to the liability of the defendants, and that this bond is no compliance with the condition contained in the letter of the defendant dated May 16, 1820. It makes Burnett the sole obligee, and does not include the rest of the company: and binds the signers to save Burnett harmless, not from the claims that might be set up by others relative to said balance as alleged in the declaration and in said letter, but from all obligations said Burnett might enter into to the said *Company*, (all the defendants.)

These objections merit the consideration of the Court, in the several views in which the case presents them.

The Court, in the first place, consider these objections weighty, and in a technical view, fatal against the admission of the bond, unless virtually waived by the agreement or conduct of the defendant. The plaintiff contends that there has been such a waiver. It appears by the case, that this bond was signed by the plaintiff and *Amos W. Barnum*, and inclosed in a letter to *Ezra Meach*, who was then at *Quebec*, with a request that he would also sign it himself, if necessary, and present it to Burnett. That Meach called upon Burnett, told him he had such a bond, and by whom it was signed, and offered to sign it himself; and that Burnett replied that, "if Mr. Meach signed it, that would be satisfactory ; but he did not wish to take the bond then, as the accounts between the defendants and the estate of Gage, (who by this time had deceased,) were not closed, and he could not tell what sum would remain in their hands, though he thought there might be three or four hundred pounds ; but he would close the account soon, and, if there should be any balance, Mr. Meach might draw on him in behalf of the plaintiff for the same."

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett

It also appears from the case, that afterwards, in October, 1820, Burnett wrote to Meach, and stated that the accounts were then closed, and that there was a balance due to the defendants from the estate of Gage.

The plaintiff's counsel contend, and this Court consider, that these circumstances, in connexion, do amount to a waiver of the above objections. It has been urged, to be sure, that this bond, as it is drawn, would not be legally binding upon the signers, to Burnett himself. The Court think otherwise.

Burnett had a right to object to its form, and require a bond payable to all the defendants : or, he might accept of this bond, and hold himself as trustee for the company, for the custody and use of it, and whatever sums might be received upon it. The recital in the bond shows it to be for the benefit of the company, and Burnett's acceptance of it makes and proves him a trustee for the company, with regard to it. So, the matter to be indemnified against, being the claims of the creditors of Gage to any balance of Gage's property in the hands of the company, Burnett's knowingly controling this balance in a way that might probably prejudice the company, and that without an indemnity, would make him equitably liable to make good the company in case of injury from that source. His becoming thus holden would probably be sufficient to entitle him to recover on this bond, after he accepts it as an indemnity. But it was in Burnett's power to remove all difficulty on this ground by entering into a proper obligation to the company before he sued the bond.

Admitting this position to be correct, still it is contended that Burnett did not know the contents of the bond—he had not seen it nor heard it read ; and, therefore, not knowing what objecttions there were to it, he could not have waived them. It does not appear that Burnett saw the bond ; and the defendant's counsel have put a fair construction upon Burnett's expression, that, if Meach signed the bond, it would be satisfactory ; to wit, that it would be satisfactory in respect to the responsibility of the signers. But Meach does not testify that Burnett did not see and read the bond ; but he does not remember as he did see it or asked to see it. It is evident, however, that Burnett either then became in some way perfectly acquainted with the contents of the bond, or placed such confidence in those who had the care of making it, that he was willing to treat it as correct, without further acquaintance with it ; for he says to Meach, " The accounts will be closed soon ; and, should there be a balance, you, (Mr. Meach), may draw on me for the same in behalf of Sutton." He did not wish to take the bond then, *because the accounts were not closed*: not, *because he had*, or suspected he could have, *any objection to the bond itself.* He further authorizes Mr. Meach to draw on him in behalf of the plaintiff for the balance, if any, after the accounts were closed : and this without stipulation or calculation how he should receive the bond, or again have the same easy access for the purpose of perusal. This is much like

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett.

the case to which it is assimilated by the Plaintiff's counsel. A sum is tendered in bank bills. The tender is refused because the sum is too small. There is a waiver of the want of such money as may be legally tendered. And, in the next step in the history of this case, the parallel becomes stronger. In October, 1820, Burnet wrote to Meach, and informed him that the accounts were closed, and the balance was in favour of the defendants, against the estate of Gage. Without writing for this, or any other bond, to be forwarded to him, he writes that, which puts out of the question all necessity for any bond.

The defendant's counsel object that the tender was not kept good in court. By this nothing can be intended, but that this bond was not sufficient to tender in court, or that it was not exhibited with sufficient formality as a tender; for the case shows that the bond was in Court, and admitted as evidence. The case does not show this to have been a litigated point, on trial: nor does it appear that Rogerson, Hunter and Company, are chargeable on any outstanding claim, by reason of which they need indemnity. If it did so appear, setting aside the verdict would not be the proper remedy :---application should be made to the court to order a stay of execution, till the indemnity should be deposited with the Clerk for the benefit of the defendants. Moreover, it would be difficult to conceive what lien any person could have upon this property, till the lien of the defendants was discharged. Gage drew the order in question, and it appears to have been sufficiently accepted in his life-time to establish the defendant's lien. No claim is mentioned but that of the Administrator of Gage. *He* can have no claim against the defendant's lien. The only remaining objection to the admission of the bond arises from the mode in which the plaintiff has declared. According to the decision in *Douglass,* 694, *Jones et al.* vs. *Barkley,* the plaintiff, instead of declaring as he has in his first count, should have stated what bond he did tender, and allege that the defendants discharged him from the necessity of any other bond, &c. This would be the correct and necessary mode of declaring, if the view now presented were the only one of which the case admits.

But another view is worthy of notice. The Court appear to have charged the jury, that the plaintiff could not recover in virtue of the first letter of the defendant, dated October 30, 1819, because he had furnished no proof of his acceptance of the proposition contained in that letter, nor of any notice to the defendant of such acceptance. It seems in this they charged too strongly for the defendant. In the defendant's letter of Oct. 30, he says "we have this day received from you Mr. Platt K. Gage's draft on us for five hundred and twenty-five pounds currency, which we cannot accept of: but, should there remain in our hands a sufficient sum of money, after our own claims are adjusted, we will remit the same on account of said draft, if it is left with us. There is a very considerable amount of Gage's property in our hands, and, we are of opinion, more than to meet all our claims." (Signed,) ROGERSON, HUNTER, & Co.

*Addison,
January,
1826.*

Sutton
*vs.*
Burnett

This letter shows the draft in the hands of the defendant. This is the last we hear of it. The case furnishes no evidence nor pretence, that it was ever taken away by the plaintiff. The defendants, then, Oct. 30, 1819, had the custody of this draft, and of that large amount of property of Gage on the credit of which, they promised the plaintiff to pay him the balance that should remain in the hands of the defendants, after satisfying their own claims against Gage, and no condition was attached to this promise, only that of the draft being *left with them.* In a few days after this, Gage died. On the sixth of January following, Burnett writes to E. D: Woodbridge, Esq. a letter which is attached to the case, in which he writes as follows : "I gave a letter in the name of Rogerson, Hunter, & Co. to Mr. Sutton obliging them to pay to him £525 when such should be realized from the proceeds of lumber placed in my hands."—Also in his letter to said Woodbridge, dated May 20, 1820, Burnett himself, among other things, writes, "I have been under the necessity of acknowledging Mr. Sutton's claims for £525 as a part, having taken an attorney's opinion in the case, and which I showed to Mr. Lawrence." Mr. Woodbridge was administrator of Gage, and had called upon Burnett for a statement of Gage's property in the defendant's hands.

The case shows that *Lawrence,* a creditor of Gage, called upon Burnett on the tenth of May, 1820, and wished him not to pay Sutton's debt, as he himself was a creditor of Gage. Burnett replied that his attorney, Mr. Stewart of Quebec, said he must pay the Sutton debt. Now, could these several matters have happened ; would the attorney have advised that the defendant was liable to pay Sutton's debt; would Burnett have acknowledged his liability at so many different times, if he had not known that the plaintiff accepted the proposition in said letter of October 30 ? Considering the amount of the draft, and that Burnett was drawee, its being suffered to remain in his possession after the proposition of that letter, was, itself, notice to Burnett, that the plaintiff accepted said proposition. For one, I am not able to see why the plaintiff's suffering the draft to remain there was not a compliance with the terms of the proposition, binding the defendants to perform their part of the proposition in that letter. At all events, had the Court viewed the facts above alluded to in their connexion with each other, as above noticed, it is presumed they would have submitted them to the jury, as grounds to presume the acceptance of said proposition by the plaintiff, and notice to the defendants. If the jury had so presumed, that would have taken away all importance from that part of the first count of the declaration, which in any way relates to the bond of indemnity ; it might be treated as surplusage, and yet a good cause of action would remain in said first count.

A more concise view still, removes this difficulty about the mode of declaring. If the facts contended for by the plaintiff are true, as the jury must have found them, the plaintiff had a

*Addison,*
*January,*
*1826.*

Sutton
*vs.*
Burnett.

claim against the defendants, for monies received by the defendants, which they ought to pay to the plaintiff, and the time had arrived, and the circumstances had occurred, when this action was brought, which rendered the same due and payable to the plaintiff. It was, therefore, a claim fair to come in upon the general count, for money had and received, and the verdict would be sustainable upon this count, if the variance had been fatal in regard to the first count.

The remaining questions are raised upon the charge given by the Court to the jury. That part of the charge which relates to a compliance, on the part of the plaintiff, with the conditions of the contract, has been sufficiently disposed of by the observations already made concerning the bond tendered. What related to the Pentland & Berry debt, was not objected to. The defendant cannot complain of that part which directs the jury to find for him, if they believe his account truly rendered; and further, that the plaintiff could not recover, unless he had succeeded in convincing the jury that the said account was faithless and false, in whole or in part. The action having once progressed so far as to oblige the defendant to render his account, and show what the balance was, for which he was liable, this part of the charge very properly requires of the defendant, to establish his account, in the first instance; and, when that is done, to the satisfaction of the jury, treats it as a good defence to the action, unless the plaintiff, taking the burden of proof upon himself, impeaches said account, and shows it faithless and false, at least in part. But it is strenuously urged, by the defendant's counsel, that the Court, in their charge, authorized the jury to weigh, as evidence upon this point, that which had no legal tendency to impeach the defendant's account: such, for instance, as the testimony about the defendant's having before purchased of Gage, the same 28000 feet of timber, which he afterwards had sold at auction, as Gage's property; and the various assertions of the defendant, as testified by Mr. Lawrence, Mr. Barnum and Mr. Meach, and the defendant's whole conduct concerning the affair. This Court do not hesitate at all to decide, that, if the company, of whom the defendant was one, had purchased of Gage, in his life time, the 28000 feet of pine timber, at four pence per foot, and remained the owner of it, and had not paid for it at Gage's death, the after treating it as Gage's property, and subjecting the plaintiff to the risk and expense of an auction sale, and especially the risk of a sale on credit; that this could be no other than a gross fraud upon the plaintiff. Again, the testimony of the defendant's whole conduct, the view he expresses of the amount of Gage's property, in his hands, in his letters to the plaintiff, of October 30, 1819, and May 16, 1820, and in his letters to Mr. Woodbridge, of January 6. and May 20, 1820, his telling Lawrence, May 10, 1820, that he thought there would be something in his hands after paying the Sutton debt; his telling Mr. Barnum, in July or August, 1820, two or three months after the last sales, that there

Addison,
January,
1826.

Sutton
vs.
Burnett.

was three or four hundred pounds in his hands, which he would pay him, and wishing a discharge in full upon payment of that sum, which was refused by Barnum; his promising to pay this, if Barnum would wait till the next boat; and, after Barnum had waited accordingly, not appearing at his counting-house to make payment, his suppositions to Meach also, in August, 1820, of the amount in his, the defendant's hands, and that the loss of the Pentland & Berry debt was known to the defendant as early as May, 1820, and the defendant's writing to Meach, in October, 1820, and then, for the first time, intimating that nothing remained in his hands, for the plaintiff; all these facts, if true, have a legal tendency to impeach the defendant's account, and furnish a strong ground for the jury to disallow said account, in part, at least, and were properly left to the jury for that purpose. Moreover, upon this finding of facts, the defendant ought to account for the 28000 feet of timber, at four pence per foot, as suggested in another part of the charge.

It is objected, that the Court erred in charging the jury, that if they found such a sale, as above mentioned, of the 28000 feet of timber to the defendant, and that the same was afterwards sold at auction as Gage's timber, it was evidence, that the auction was a sham sale, and not made in good faith. It is urged, that if this were so, it would not impeach the auction sale of the other timber. Had the Court charged that this was conclusive evidence of such fact, it would be liable to objection. But they only say, it is *evidence*, and surely, proving one *item* of a man's book of accounts, designedly fraudulent and false, in some degree impeaches his whole account. Showing that a witness designedly falsifies in a part of his testimony, impeaches his whole testimony. So, in this auction sale, which should have been honestly conducted, for the benefit of all concerned, and professes to have been so conducted, if a part of it is found to be a fraudulent management of the defendant, to injure the plaintiff and diminish the balance of property in the hands of the defendant, to which the plaintiff was entitled, this necessarily casts a shade of suspicion over the whole sale, which is to affect that balance. The charge, therefore, leaving this circumstance to be weighed in connexion with the whole transaction, was not erroneous.

It is further objected, that the Court erred in charging the jury, that if they believed the auction sale was merely colourable, and that property of Gage had been disposed of by the company, the defendant was to be charged with the fair market price of the property, at the time of such disposition, deducting the usual commissions. It is urged, that the word "colourable" is vague, and ought to have been explained to the jury. In common parlance, *merely colourable* would be understood as implying no reality, but a show or pretence of something which did not exist. In that sense it was here used. It seems also, that the jury could not understand it otherwise, for it is introduced as expressing the same idea before included in the term, *sham sale*. The Court speak of evidence tending to show a

*Addison,*
January,
1826.

Sutton
*vs.*
Burnett.

sham sale, then instruct the jury, that if they find this same sale merely colourable, to treat it as no sale, and make the defendant account for the property, at a fair price  Thus the Court pass over this objection as not available.  But the Court charged the jury not to deduct the usual commissions, where it appeared that the sale was to the company, (the defendants,) &c.  This is objected to, on the ground that the company had as good a right to become purchasers, as other people, and the auctioneers alike entitled to their commissions in the one case as the other.  In reference to this objection, if it were well founded, the Court would not, of course, set aside the verdict, but only confirm it under a rule, that the plaintiff deduct such a sum as the Court should fix as the true amount of commissions affected by this part of the charge.  But the objection is wholly founded in a misapprehension of facts.  There should be no commissions, except in case of actual sale.  No sale is pretended, but this auction sale.  If this were a sham sale, or merely colourable, it was no sale ; and the plaintiff ought not to be compelled to lose the amount of commissions upon it. any further than it operated as a sale.  But, if it were thus no sale, and the property went back into the hands of the defendant, after the pretended sale, just as before, there was nothing on which to charge commissions, and none ought to be allowed.  But if the defendant had shown an after sale, made by him, at the risk of Gage's estate, and virtually at the plaintiff's risk, and had charged the usual commissions on that sale, it would have presented a very different question ; and, probably, produced a different charge. The essence of the charge, upon this point, was, not to allow commissions, as upon a sale, where there was no sale.

One objection more is urged; the court. in conclusion, instruct the jury, that if they are satisfied, by the vouchers and proofs, that the items on the debtor side of the defendant's account, were just, to allow the same ; if they were not so satisfied, to reject them.  It is said, this is too vague.

It appears, on reading the whole charge, that the judge erected a monument, to direct the jury at every possible point of deviation, and here pointed them to a resting place.  The legal import of the expression objected to, is, that the jury should allow such items as were proved to exist, according as the same were charged, and to reject such as were not thus proved to exist.

After thus disposing of all the objections, recollected to have been made, the Court direct, that

> Judgment be entered upon the verdict of the jury, adding interest to the amount, according to the rule entered into by the defendant, on the respiting the judgment.

Prentiss J. being of counsel, did not sit in the cause.

*Noah Hawley, Daniel Chipman, Geo. Chipman* and *R. B. Bates,* for the plaintiff.

*S. S. Phelps* and *S. Prentiss,* for the defendant.